UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————————

CRISTOVAL HERNANDEZ,              )
# 831592,                        )
                                 )
            Petitioner,           )        Case No. 1:15-cv-341
                                 )
v.                               )        Honorable Paul L. Maloney
                                 )
KENNETH MCKEE,                   )
                                 )
            Respondent.           )
————————————————————————)

## **REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner's convictions stem from his repeated sexual assaults against his stepdaughter, "AV," beginning when she was thirteen or fourteen years old.  On February 3, 2012, an Ingham County Circuit Court jury found petitioner guilty of nine counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(b)(i) (sexual penetration of a person who is at least thirteen but less than sixteen years of age and defendant is a member of the same household), one count of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(b)(i) (sexual contact with a person who is at least thirteen but less than sixteen years of age and defendant is a member of the same household), one count of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(d) (sexual penetration with a person who is related to defendant), and one count of disseminating sexually explicit matter to a minor, MICH. COMP. LAWS § 722.675.

On February 29, 2012, the trial court judge sentenced petitioner to concurrent sentences of 22 ½ to fifty years' imprisonment on the nine first-degree criminal sexual conduct convictions, five years and eleven months to eight years and four months' imprisonment on the second-degree criminal sexual conduct conviction, seven years and one month to fifteen years' imprisonment on the third-degree criminal sexual conduct conviction, and one year and four months to two years' imprisonment on the disseminating sexually explicit matter to a minor conviction.

On March 24, 2015, petitioner filed his habeas corpus petition.  (ECF No. 1). Petitioner seeks federal habeas corpus relief on the grounds that were raised and rejected in the Michigan Court of Appeals:

I.      Petitioner was denied his constitutional right to confront his accusers by the trial court's limitations on cross-examination. U.S. CONST. amend VI, XIV.

II.     Petitioner was denied his constitutional right to a fair trial and his right of confrontation and the trial court erred in denying a motion for mistrial where the prosecutor asked improper leading questions which resulted in petitioner being unable to confront one of his accusers, and petitioner was further prevented from impeaching her testimony.  U.S. CONST. amend VI, XIV.

III.    Petitioner was denied a fair trial by the trial court's qualification of a detective as an expert in "grooming" and by testimony that defendant had been grooming his step-daughter.  U.S. CONST. amend VI, XIV.

IV.     Petitioner was denied a fair trial by the admission, over objection, of other bad acts testimony.  U.S. CONST. amend XIV.

V.      The trial court erred in admitting an entire box full of allegedly pornographic movies that were not connected to the offenses charged and that were irrelevant, inflammatory, and more prejudicial than probative.  U.S. CONST. amend XIV.

VI.      Petitioner must be resentenced because the trial judge's reasons for an upward departure under Michigan's sentencing guidelines were, in part, not objective and verifiable, were already considered in the guidelines, or did not pertain to petitioner; the trial court assumed petitioner was guilty of another offense without proof; and the trial judge failed to articulate a substantial and compelling reason for the extent of the upward departure. U.S. CONST. amend XIV.

(*Id.* at PageID.2-3).

Respondent argues that the petition should be denied because all grounds raised by petitioner lack merit. Further, respondent argues that Ground III is also barred by procedural default.[1] (ECF No. 12).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. Petitioner has not shown that the state court decision rejecting the grounds raised in the petition "were contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d). I recommend that the petition be denied on the merits.

---

[1]The Supreme Court has indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

## <u>Standard of Review</u>

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference.  If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

**A.    Circuit Court Proceedings**

Petitioner's trial began on January 26, 2012, and it concluded with the jury's verdict on February 3, 2012, finding him guilty on all twelve charges.    (Trial Transcripts, TT1-TT6, ECF No. 13-7 through 13-12).

The primary witness against petitioner was the victim, his step-daughter, AV. (TT3 at 30-236, ECF No. 13-9, PageID.489-540; TT4 at 4-70, ECF No. 13-10, PageID.545-61).  The jury's verdict indicates that it found credible AV's testimony regarding petitioner's criminal sexual conduct.   The specifics of AV's testimony regarding each incident of criminal sexual conduct petitioner committed against her need not be revisited.[2]

AV's maternal grandmother described how petitioner's criminal sexual conduct against AV came to the attention of law enforcement officials.  (TT2 at 52-97, ECF No. 13-8, PageID.434-46).  Juan Zavala, AV's ex-boyfriend, testified regarding details of his relationship with AV, her behavior, and some additional details regarding the decision to contact the police.  (*Id.* at 112-31, PageID.449-54).

Representatives of law enforcement, child protective services, and a physician testified regarding details of their investigations.  (TT2 at 45-52, 132-205, ECF No. 13-8, PageID.433-34, 454-73; TT4 at 182-237, PageID.589-603; TT5 at 195-208, ECF

---

[2] The habeas corpus petition does not involve any challenge to the sufficiency of the evidence supporting petitioner's convictions.    The Michigan Court of Appeals provided a summary of petitioner's criminal sexual conduct.  (Op. at 2-4, ECF No. 13-14, PageID.700-02).

No. 13-11, PageID.659-62).

The jury also heard testimony from members of AV's family, including the following:[3] AV's mother and petitioner's co-defendant, Rebbecca Hernandez (TT5 at 139-94, ECF No. 13-11, PageID.645-59); AV's sister CS (TT4 at 113-70, ECF No. 13-10, PageID.571-86), AV's step-brother Cristoval Jr. (TT5 at 90-105, ECF No. 13-11, PageID.633-37), and AV's step-sister FH (TT4 at 78-111, ECF No. 13-10, PageID.563-571).

On February 2, 2012, the attorneys gave their closing arguments.  (TT5 at 208-63, ECF No, 13-11, PageID.663-76).  On the same date, the trial court judge delivered the jury instructions.  (*Id.* at 263-92, PageID.676-84).

On February 3, 2012, the jury found petitioner guilty on all twelve counts. (TT6 at 3-6, ECF No. 13-12, PageID.687).

On February 29, 2012, Judge Clinton Canady conducted a sentencing hearing. (Sentencing Transcript, (ST), ECF No. 13-13, PageID.690-98).  The prosecution asked that the court depart two times above the guideline range.  Petitioner's attorney requested a sentence within the guidelines range.  Judge Canady found eight reasons why a fifty percent upward departure from Michigan's sentencing guidelines was

---

[3] Petitioner and Rebecca Hernandez married in 2004.  (TT5 at 140, 151, ECF No. 13-11, PageID.646, 648).   Petitioner had three children from a prior relationship: Marisol, Cristoval, Jr., and FH.  (TT2 at 57-60, ECF No. 13-8, PageID.436; TT5 at 149, 162, ECF No. 13-11, PageID.648, 651).  Rebecca Hernandez gave birth to five children.  (TT5 at 143, ECF No. 11-13, PageID.646).  AV and CS were born before her relationship with petitioner.  She had three children during her relationship with petitioner.  (TT2 at 55-58, ECF No. 13-8, PageID.436; TT3 at 39, ECF No. 13-9, PageID.491; TT5 at 146, ECF No. 13-11, PageID.647).

warranted:  (1) AV was singled out in the household for abuse and Rebecca and petitioner tried to classify her as a problem child; (2) the sentencing guidelines failed to account for a stepfather and a mother forcing a child to engage in multiple sex acts with them; (3) the sentencing guidelines failed to account for the three year length of time that the sexual abuse occurred; (4) one of the reasons that AV did not say anything about the abuse was because she feared that CS would be victimized if she did so; (5) once AV left the house, petitioner did in fact turn to CS and sexually assault her; (6) AV was exposed to all types of sexual acts, pornographic materials, sex aids, and being compelled to perform a sexual act on her mother; (7) Rebecca beat AV when AV was noncompliant with sexual acts; and (8) although FH's testimony was vague, it was reasonable to conclude that petitioner did "something" to FH, showing that he simply "move[d] on" to the next victim when AV was not available.  (ST at 24-26, PageID.696-97).

Judge Canady noted that a fifty-percent departure was proportionate.  It was significantly less than the doubling requested by the prosecution.  AV had ""just turned 14 when this happened," and if she had been thirteen, the offense would have carried a 25 year minimum sentence.  When AV was no longer available for sexual violations because she moved out of the house, petitioner moved on to her younger siblings.  Accordingly, Judge Canady exercised his discretion and departed from the upper limit of the sentencing guidelines range on the first-degree criminal sexual conduct convictions by fifty percent and imposed a 22-½-year minimum sentence.  (*Id.* at 26-28, PageID.697).  Given the upward departure on the primary counts and that

all the sentences would be served concurrently, no departure on the other counts was necessary.  Judge Canady sentenced petitioner to five years and eleven months to eight years and four months' imprisonment on the second-degree criminal sexual conduct conviction, seven years and one month to fifteen years' imprisonment on the third-degree criminal sexual conduct conviction, and one year and four months to two years' imprisonment on the disseminating sexually explicit matter to a minor conviction.  (*Id.* at 27-29, PageID.697-98).

Petitioner pursued a direct appeal and raised the same issues that he is raising in his habeas corpus petition.  (Defendant Appellant's Brief at v-vi, Statement of Questions Presented, ECF No. 13-14, PageID.735-36).  On November 12, 2013, the Michigan Court of Appeals found that all grounds raised by petitioner were meritless and it affirmed petitioner's convictions and sentence.  (Op. at 1-27, ECF No. 13-14, PageID.699-725).

Petitioner generally raised the same issues in his application for leave to appeal to the Michigan Supreme Court.[4]  (Defendant-Appellant's Brief at vi-vii, Statement of Questions Presented, ECF No. 13-15, PageID.938-39).  On March 28, 2014, the Michigan Supreme Court denied petitioner's application for leave to appeal.  (ECF No. 13-15, PageID.930).

On March 30, 2015, petitioner filed his federal habeas corpus petition.  (ECF No. 1).

---

[4] Petitioner added a new and perfunctory claim that his sentence violated the Supreme Court's June 17, 2013, decision in *Alleyne v, United States*, 113 S. Ct. 2151 (2013).  (ECF No. 13-15, PageID.939, 989).

## Discussion

### I.    Confrontation Clause

In Ground I, petitioner argues that he was denied his constitutional right to confront his accusers by various evidentiary rulings made by the trial court judge.[5] Here, as on direct appeal in the Michigan Court of Appeals, petitioner objects to rulings Judge Canady made with regard to the following:  (A) use of a private investigator's report in the cross-examination of Juan Zavala, (B) use of a postcard in the cross-examination of FH, (C) cross-examination of AV, (D) direct examination of Michelle Dodge, and (E) direct examination of Cristoval Jr.  (ECF No. 1, PageID.2; Petitioner's Brief at 8-11, ECF No. 3, PageID.21-24).

The Michigan Court of Appeals rejected all petitioner's arguments claiming that Judge Canady's rulings violated his rights under the Confrontation Clause.  (Op. at 2, 8-16, ECF No. 13-14, PageID.700, 706-14).  Petitioner has not addressed, much less carried his burden under 28 U.S.C. § 2254(d), the claims found in Ground I. (Petitioner's Brief at 8-11, ECF No. 3, PageID.21-24).

The Sixth Amendment's Confrontation Clause states that, in all criminal prosecutions, the accused shall enjoy the right "to be confronted with the witnesses

---

[5] The extraordinary remedy of habeas corpus lies only for a violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

-11-

against him." U.S. CONST. amend VI.  The Confrontation Clause is applicable to the States through the Fourteenth Amendment's Due Process Clause.  *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

Cross-examination is a "primary interest" secured by the Confrontation Clause.  *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*).  The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing any limits on defense counsel's cross-examination.  "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limitations on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986); *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  " '[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.' "  *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

"While the Constitution thus prohibits exclusion of defense evidence under rules that serve no legitimate purpose or that they are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors

such as unfair prejudice, confusion of issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. at 326. "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. at 308.

A.    Investigator's Report

The Michigan Court of Appeals rejected petitioner's Confrontation Clause argument based on an evidentiary ruling made regarding a private investigator's report. Petitioner's attorney had a report regarding an interview with Juan Zavala, AV's former boyfriend. The prosecutor learned of the report's existence on the second day of trial, "approximately five minutes before Zavala testified." (Op. at 9, ECF No. 13-14, PageID.707). The trial court judge found that the failure to turn over the report constituted a discovery violation, and defense counsel was not allowed to use the report during Zavala's cross-examination. Nonetheless, petitioner's attorney remained free to inquire of Mr. Zavala whether he was familiar with AV's reputation for truth and veracity. (*Id.*).

On cross-examination, Mr. Zavala testified that he did not know AV's reputation in this regard. He could not testify regarding AV's reputation for truth and veracity in the community when he did not know it. The Michigan Court of Appeals noted that, "[b]ecause Zavala testified that he was unaware of AV's reputation for truth or veracity in the community, he could not have offered testimony regarding AV's reputation for truthfulness or untruthfulness." (*Id.* at 10, PageID.708). Petitioner "was not denied his right to confront witnesses against him

when the trial court precluded defense counsel from utilizing the private investigator's report during his cross-examination of Zavala." (*Id.* at 11, PageID.709).

    B.   <u>Postcard</u>

The Court of Appeals rejected petitioner's claim of a Confrontation Clause violation stemming from an evidentiary ruling regarding a use of a postcard in the cross-examination of FH.[6]  Use of the postcard in cross-examination had been prohibited because it had not been disclosed to the prosecutor before trial. Notwithstanding the trial court's ruling, petitioner's attorney was permitted to question FH and elicit testimony that she sent petitioner postcards after AV made the sexual abuse allegations against him.  Petitioner "failed to establish that the trial court's ruling denied him his right of confrontation." (*Id.* at 11-12, PageID.709-10).

    C.   <u>Cross-examination of AV</u>

The Michigan Court of Appeals rejected petitioner's claims that evidentiary rulings made during the cross-examination of AV violated his rights under the Confrontation Clause.  The testimony that petitioner's attorney sought to elicit from AV was irrelevant and inadmissible.  The ultimate issue was whether petitioner committed the acts alleged.  "Whether AV had threatened to kill her siblings and whether she used drugs or alcohol during the abuse was not relevant to that question." (*Id.* at 12, PageID.710).  "Similarly, whether AV made accusations that

---

[6] FH, a teenage daughter of petitioner, provided relatively brief testimony.  She had to be reminded to speak up and to give verbal responses to questions.  Questioning had to be stopped at one point because she was crying.  (TT4 at 78-111, ECF No. 13-10, PageID.563-71).

someone had tried to abduct her in a park in 2008 was not relevant to that question." (*Id.*).  Counsel did not seek to ask AV whether she had previously made accusations against a specific person that were purportedly untrue.  Petitioner "was not denied his right of confrontation when the trial court limited the scope of defense counsel's cross-examination of AV."  (*Id.*).

### D.    Examination of Michelle Dodge

The Court of Appeals found no merit in petitioner's Confrontation Clause claim based on an evidentiary ruling regarding a direct examination question petitioner's attorney posed to Michelle Dodge, the mother of AV's ex-boyfriend, Giovanni Limes. Petitioner's attorney had attempted to elicit character evidence without following the prerequisites of Rule 608(a) of the Michigan Rules of Evidence, which allows the impeachment of a witness's credibility by evidence of the witness's reputation for truthfulness or untruthfulness.  "The admissibility of such evidence, however, must be based on what the person offering the evidence has heard from other people in the subject's community regarding the subject's truthfulness or lack thereof."  (Op. at 13, ECF No. 13-14, PageID.711).    Petitioner's attorney did not ask Ms. Dodge the foundational question whether she was familiar with AV's reputation for truthfulness or veracity in the community.  Petitioner "was not denied his right of confrontation when the trial court precluded defense counsel from inquiring of Dodge whether AV was truthful or untruthful."  (*Id.*).

### E.    Examination of Cristoval Jr.

The  Michigan  Court  of  Appeals  rejected  petitioner's  argument  that  his

Confrontation Clause rights had been violated because the trial court prohibited defense counsel from inquiring of Cristoval Jr. regarding purported statements that FH had made to him.  The trial court allowed the prosecutor to present FH's and CS's testimony regarding uncharged sexual acts committed by petitioner under MICH. COMP. LAWS § 768.27a.  (Op. at 13, ECF No. 13-14, PageID.711).  After FH testified, defense counsel sought to elicit testimony from Cristoval Jr. that FH had denied that petitioner sexually assaulted her.  Defense counsel conceded that FH never actually testified that petitioner had sexually assaulted her, but maintained that FH's body language, behavior, and inferences could allow the jury to infer that petitioner sexually assaulted her.

The trial court refused to allow the testimony on the basis that there was no testimony to impeach because FH did not testify that petitioner sexually assaulted her.  The court recognized that defense counsel could have cross-examined FH regarding her purported accusation but did not do so.  (Op. at 16, PageID.714).  The court explained:

> It is axiomatic that in order to impeach a witness with a prior inconsistent statement, there must have been a statement made during trial that is inconsistent with the prior statement.  Here, FH did not make a statement that was inconsistent with her purported prior statement to Cristoval Jr.  Rather, FH did not say anything when asked whether [petitioner] had sexually assaulted her.  While it can be argued that FH's actions and body language implied that [petitioner] had sexually assaulted her, FH did not actually testify as such.  Accordingly, there was no statement made during trial to impeach.

(*Id.*).  Moreover, petitioner "was not denied his right to confront the witnesses against him because, as the trial court recognized, defense counsel could have cross-examined

FH regarding whether [petitioner] had sexually assaulted her, but counsel failed to do so." (*Id.*).

The Michigan Court of Appeals rejected all petitioner's arguments claiming that the trial court judge's rulings violated his rights under the Confrontation Clause. (Op at 2, 8-16, ECF No. 13-14, PageID.700, 706-14).  Petitioner has not shown that the adjudication of the claims found in Ground I "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Ground I does not provide a basis for habeas corpus relief.

## II.    Evidentiary Rulings and Denial of a Motion for a Mistrial

In Ground II, petitioner argues that he was denied his constitutional right to a fair trial and his right of confrontation, and that the trial court erred in denying a motion for mistrial, where the prosecutor asked improper leading questions that resulted in petitioner being unable to confront FH.  (ECF No. 1, PageID.2; Petitioner's Brief at 12-18, ECF No. 3, PageID.25-31).

The Michigan Court of Appeals rejected petitioner's arguments.  (Op. at 2, 16-18, ECF No. 13-14, PageID.700, 714-16).  Many of the prosecutor's questions to FH were not leading and the leading questions that were posed "were necessary to attempt to develop FH's testimony."  (*Id.* at 17, PageID.715).  "FH was 16 years old at the time of trial, and the incident that occurred to her happened when she was

only 14 years old.  It is clear from her testimony that she was very distraught and needed guidance to develop her testimony." (*Id.*).  Further, as the Court of Appeals noted:

> the prosecutor's questions did not elicit testimony from FH because she became overwhelmed, unresponsive, and stated "I can't do this."  Thus, the prosecutor's leading questions were not effective in eliciting the prosecutor's desired testimony.  In sum, the trial court did not abuse its discretion by allowing the prosecutor to ask FH leading questions and, accordingly, did not abuse its discretion by denying [petitioner's] motion for a mistrial.

(*Id.*).

The Court of Appeals rejected petitioner's argument that FH's refusal to answer questions, following an inference created by the prosecutor's leading questions that petitioner had sexually assaulted her, prevented petitioner from confronting FH.  "Defense counsel was provided an opportunity to cross-examine FH and he did so.  Notably, he did not ask FH any questions regarding her accusation against [petitioner]." (Op. at 18, PageID.716)  "Because defense counsel had an opportunity to cross-examine FH regarding her accusation, [petitioner] was not denied his right to confront FH." (*Id.*).

Further, the Michigan Court of Appeals found no merit in petitioner's argument that he was denied his right to confront FH because the trial court excluded the postcard that she had sent petitioner in which she stated that she loved him:

> It was clear from FH's testimony that she loved her father and did not want to testify against him.  She was unresponsive to some questions, including when the prosecutor asked her if she loved her dad.  At one point, FH exclaimed, 'I just want to get out of here.  I want to go home.' The postcard in which FH stated that she loved her father would not have impeached her testimony, but rather, would have been corroborative of the clear inference that she loved her father.

> Accordingly, [petitioner] was not denied his right to confront FH nor was he denied a fair trial.

(*Id.*).

Petitioner ignores the decision of the Michigan Court of Appeals, rather than addressing it under deferential AEDPA standards. (Petitioner's Brief at 12-18, ECF No. 3, PageID.25-31). Petitioner has not shown that the adjudication of the claims found in Ground II "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.    Testimony Regarding "Grooming"

Ground III is petitioner's claim that he was denied a fair trial by the trial court's qualification of Detective Elizabeth Reust as an expert in "grooming," and the admission of testimony by Detective Reust and Child Protective Services Worker Matthew Walters that petitioner had groomed his step-daughter CS. (ECF No. 1, PageID.2; Petitioner's Brief at 19-22, ECF No. 3, PageID.32-35).

The Michigan Court of appeals rejected petitioner's arguments for lack of merit. (Op. at 2, 18-21, PageID.700, 716-19). Matthew Walters provided a definition of grooming and testified that he became concerned during his investigation that petitioner grooming CS. (*Id.* at 18-19, PageID.716-17). The trial court judge qualified Detective Reust as an expert in grooming over petitioner's objection. "Reust testified that '[g]rooming is the process of preparing the environment and a child to be sexually

abused,' including reducing the likelihood that the child will disclose the abuse." (*Id.* at 19, PageID.717).

CS testified as to actions by petitioner that appeared to fall within the definition of grooming. (*Id.*). This included a game where they would pinch each other, but petitioner kept pinching her on her leg "higher up to [her] private areas" and a "nozzle game," which involved petitioner licking his hand and putting it all over CS's face. (*Id.* at 19, PageID.717). Detective Reust opined that the "nozzling" that CS described was a grooming technique. CS also testified regarding an incident in the kitchen when petitioner put his arms around her and put his hands inside the front of her pants. He unbuttoned her pants and tried to unbutton his pants, but her brother walked into the room, and petitioner stopped. (*Id.*).

The Court of Appeals held that any error in qualifying Detective Reust as an expert in grooming was harmless:

> [A] police witness may be qualified as an expert on the basis of training and experience in child sexual abuse cases. Reust testified that she had worked as a police officer for 22 years and as a detective in particular for 12 years. She investigated crimes involving children for nearly the entire time that she had worked as a detective and received training in that area. Reust also taught at various conferences and police departments regarding how to investigate abuse involving children. She had received training regarding grooming in particular and had conducted at least 700 forensic interviews with children. Thus, based on Reust's training and experience, she qualified as an expert in grooming.

(Op. at 20, PageID.718). Moreover, the Court of Appeals held that any error in qualifying Detective Reust as an expert was harmless because her testimony regarding grooming "was nearly identical to Walters's lay testimony," which was

presented earlier in the trial.  (*Id.* at 20-21, PageID.718-19).

In addition, the Michigan Court of Appeals rejected petitioner's argument that Detective Reust improperly testified that the nozzling behavior between petitioner and CS constituted grooming.  After the detective testified about grooming generally, she opined, "[t]he nozzling that [CS] described, the licking of your hand and rubbing it on the child's face and in the context that it's been described, I would say that is part of a grooming technique."  (Op. at 21, PageID.719).  Detective Reust's testimony with respect to grooming did not invade the province of the jury by offering an opinion regarding whether sexual abuse occurred or by vouching for the victim's credibility.  Rather, the detective's testimony, "pertained to a relevant but collateral matter, i.e., whether [petitioner] was grooming CS for sexual abuse.  None of the charges against [petitioner] pertained to CS and, accordingly, Reust's testimony did not vouch for her veracity.  Because the testimony was not improper, its admission did not deny [petitioner] his right to a fair trial."  (*Id.*).

Petitioner has not addressed, much less carried his burden under 28 U.S.C. § 2254(d).  (Petitioner's Brief at 19-22, ECF No. 3, PageID.32-35).  I find that Ground III does not provide a basis for habeas corpus relief.

## IV.    **Admission of Bad Acts Evidence**

Ground IV is petitioner's claim that he was denied a fair trial by the admission of other bad acts testimony concerning uncharged sexual acts involving both FH and CS, as well as evidence of physical abuse involving AV.  (ECF No. 1, PageID.2; Petitioner's Brief at 23-27, ECF No. 3, PageID.36-40).

The Michigan Court of Appeals rejected all of petitioner's arguments.  (Op. at 2, 21-24, ECF No. 13-14, PageID.700, 719-22).  The Court of Appeals found no error in the admission of evidence of uncharged sexual acts involving both FH and CS. Under MICH. COMP. LAWS § 768.27a(1), "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  (Op. at 22, ECF No. 13-14, PageID.720).  The court explained:

> FH did not actually testify regarding any sexual contact between she and [petitioner] because she became emotional and was unable to answer questions about the purported contact.  FH's testimony thus merely created an inference that a sexual assault had occurred.  CS testified that [petitioner] pinched her leg and kept pinching her 'higher up to [her] private areas[.]'  She also testified that [petitioner] put his hands inside the front of her pants in the kitchen.  Such testimony and inference were relevant to AV's credibility and were therefore relevant to the ultimate issue in the case, i.e., whether [petitioner] sexually assaulted AV.

(*Id.*).  The prejudicial effect of the testimony did not substantially outweigh its probative value.  (*Id.* at 23, PageID.721).

Petitioner's argument regarding physical abuse of AV fared no better.  (*See d.* at 23, PageID.721 (describing AV's testimony concerning this issue)).  The Michigan Court of Appeals held that the "testimony regarding AV's physical abuse and the fact that she was forced to take Benadryl was relevant to describe the 'complete story' of what occurred in Rebecca and [petitioner's] household and their treatment of AV generally.  The evidence demonstrated Rebecca and [petitioner's] clear lack of respect for AV as a human being and their view of AV as merely an object."  (*Id.* at 23-24,

PageID.721-22).  Having also found that the testimony was relevant and that its probative value outweighed any undue prejudice, the Court of Appeals  ruled that "the trial court did not abuse its discretion by admitting the evidence, and [petitioner] was not denied a fair trial."  (*Id.* at 24, PageID.722).

Petitioner ignores the decision of the Michigan Court of Appeals.  (Petitioner's Brief at 23-27, ECF No. 3, PageID.36-40).  He has not addressed, much less carried his burden under 28 U.S.C. § 2254(d).  I find that Ground IV does not provide a basis for habeas corpus relief.

## V.    Admission of Movies

In Ground V, petitioner argues that the trial court erred in admitting an entire box full of allegedly pornographic movies that were not connected to the offenses charged, and that were irrelevant, inflammatory, and unduly prejudicial.  (ECF No. 1, PageID.3; Petitioner's Brief at 27-29, ECF No. 3, PageID.40-42).

The Michigan Court of Appeals rejected petitioner's arguments.  (Op. at 2, 24-25, ECF No. 13-14, PageID.700, 722-23).  It held that the trial court did not abuse its discretion in admitting the movies into evidence and that the admission of the evidence did not deprive petitioner of a fair trial.  The Court of Appeals recounted the substance of AV's testimony concerning the movies, and concluded that they tended to support her credibility.[7]  (*Id.* at 24-25, PageID.722-23).  The court also noted that

---

[7] The Court of Appeals noted that "the trial court did not allow the movies to be viewed during trial on the basis that doing so would be prejudicial to [petitioner].  Thus, Reust described what she saw in the movies instead of playing them before the jury."  (Op. at 25 n.8, PageID.723).

the movies were relevant to the charge of disseminating sexually explicit matter to a minor. (*Id.*).

The Michigan Court of Appeals held that the probative value of the pornographic movies was not substantially outweighed by the danger of unfair prejudice: "The movies were not merely marginally probative given that they tended to support AV's credibility. In fact, they were probative of the ultimate issue to be determined, i.e., whether [petitioner] engaged in various sexual acts with AV and disseminated sexually explicit material to her." (*Id.* at 24-25, PageID.722-23).

Whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. at 67-68 (1991); *see* 28 U.S.C. 2254(a).

To the extent that petitioner is claiming a violation of due process, He has not addressed, much less carried his burden under 28 U.S.C. § 2254(d). I find that Ground V does not provide a basis for habeas corpus relief.

## VI.    Sentence

Ground VI is a challenge to petitioner's sentence. He argues at least three of the trial judge's reasons for an upward departure from Michigan's sentencing guidelines were, in part, not objective and verifiable, were already considered in the guidelines or did not pertain to him. Petitioner also complains that the trial court assumed he was guilty of another offense without proof, and the trial judge failed to

articulate a substantial and compelling reason for the extent of the upward departure. (ECF No. 1, PageID.2; Petitioner's Brief at 30-32, ECF No. 3, PageID.43-45).

The Michigan Court of Appeals rejected all of petitioner's arguments regarding his sentence. (Op. at 2, 23-27, ECF No. 13-14, PageID.700, 723-25). The trial court's reasons for departure were objective, verifiable, substantial, and compelling. (*Id.* at 26-27, PageID.724-25). There was no sentencing guidelines error because state courts are the final arbiters of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Even if there had been an error, it would not provide a basis for relief. It is well established that a perceived sentencing guidelines error is not a basis for federal habeas corpus relief. Habeas corpus relief does not lie for perceived state law errors. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. at 67-68.

Federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991). All petitioner's sentences were within the statutory limits. Petitioner was sentenced to concurrent sentences of 22 ½ to fifty years' imprisonment on his nine first-degree criminal sexual conduct convictions. A first-degree criminal sexual conduct conviction is punishable by a term of imprisonment "for life or any number of years." MICH. COMP. LAWS § 750.520b(2)(a). He received a sentence of five years and eleven months to eight

years and four months' imprisonment on his second-degree criminal sexual conduct conviction.  The statutory maximum penalty was "imprisonment for not more than 15 years."  MICH. COMP. LAWS § 750.520c(2)(a).  Petitioner received a sentence of seven years and one month to fifteen years' imprisonment on his third-degree criminal sexual conduct conviction.  The statutory maximum was "imprisonment for not more than 15 years."  MICH. COMP. LAWS § 750.520d(2).  Finally, on his conviction for disseminating sexually explicit matter to a minor, petitioner received a sentence of one year and four months to two years' imprisonment.  The statutory maximum was "imprisonment for not more than 2 years."  MICH. COMP. LAWS § 722.675(5).

Petitioner's claim that his sentence violates *Alleyne v. United States*, 133 S. Ct. 2151 (2013) does not appear in his habeas corpus petition.  Petitioner expressly raises the issues presented to the Michigan Court of Appeals, which did not include any claim based on *Alleyne*.  (ECF No. 1, PageID.2-3).  Petitioner's brief, however, contains an argument that the trial court's upward departure from Michigan's sentencing guidelines was "extreme" and violated his Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and A*lleyne*.  Petitioner's claim is unexhausted and meritless.

Petitioner's *Alleyne* claim was raised for the first time in petitioner's application for leave to appeal to the Michigan Supreme Court.  Raising a claim for the first time on discretionary appeal to the state Supreme Court does not suffice. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). An issue has not been fairly presented to the state courts for purposes of exhaustion when it is raised for the first time in

the state Supreme Court and that court declines to exercise its right to discretionary review.  *See Skinner v. McLemore*, 425 F. App'x. 491, 494 (6th Cir. 2011); *see also Bridges v. Barrett*, 1:16-cv-1269, 2017 WL 1030500, at*3 (W.D. Mich. Mar.  7, 2017) (collecting cases).  Habeas relief cannot be granted on unexhausted claims.  28 U.S.C. § 2254(b)(1)(A).  Habeas corpus relief "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Petitioner's claim of a Sixth Amendment violation under *Apprendi*, *Blakely,* and *Alleyne* is meritless.  The Sixth Amendment provides:  'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury....'  This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt."  *Hurst v. United States*, 136 S. Ct. 616, 621 (2016).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  Here, under the jury's verdict, petitioner could have been sentenced to life imprisonment on any one of his nine convictions for first-degree criminal sexual conduct.  *See* MICH. COMP. LAWS § 750.520b(2)(a).

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline

scheme violated Sixth Amendment rights, and reiterated the rule that any fact that increased the maximum sentence must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 232 (citing *Blakely*, 542 U.S. at 303).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan*, 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; and see *People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme).

In *Alleyne*, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.[8]  133 S. Ct. at 2155.  Here, we are not

---

[8] The Sixth Circuit concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment.  *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x. 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.' … It said nothing about *guidelines* sentencing factors....") (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

dealing with a judicial finding of fact that increased petitioner's mandatory minimum sentence under Michigan's sentencing guidelines.[9]  We are dealing with a challenge to a few of the listed reasons the trial court judge gave for exercising his discretion to upwardly depart from Michigan's sentencing guidelines.  In *Alleyne,* the Supreme Court emphasized:  "we take care to note what our holding does not entail.  Our holding today does not mean that any fact that influences judicial discretion must be found by a jury.  We have long recognized that broad sentencing discretion by judicial factfinding does not violate the Sixth Amendment."  113 S. Ct. at 2163.

The judicial fact-finding to which petitioner now objects had no bearing on the determination of petitioner's guidelines minimum range.  Thus, *Alleyne* does not apply here.  From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here, in upwardly departing from the minimum range established by the guidelines, violates the Sixth Amendment.

I find that Ground VI does not provide a basis for habeas corpus relief.

---

[9] In *People v. Lockridge*, 870 N.W.2d 502, (Mich. 2015), the Michigan Supreme Court made Michigan's sentencing guidelines advisory and struck down the requirement that a departure from the guidelines be supported by a substantial and compelling reason.  Further, it found that because Lockridge received an upward departure sentence that did not rely on the minimum sentence range score, he could not "show prejudice from any error in scoring the [offense variables] OVs in violation of *Alleyne*." 870 N.W.2d at 522.

## VII.    Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under Slack, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claims would be debatable or wrong.  Therefore, I recommend that a certificate of appealability should be denied.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.  I recommend that a certificate of appealability be denied.


Dated:  February 7, 2018                    /s/  Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).